**Joyce M. ELLEFSON, Plaintiff and Appellant,**

v.

**Peter H. EARNSHAW, M.D., Defendant and Appellee,**

**and**

**St. Joseph's Hospital of Minot, North Dakota, a Non–Profit Corporation, Defendant.**

**Civ. No. 920214.**

Supreme Court of North Dakota.

April 27, 1993.

Dosch Law Office, Devils Lake, for plaintiff and appellant; argued by Michael J. Walker.

Zuger, Kirmis & Smith, Bismarck, for defendant and appellee; argued by Lance D. Schreiner.

VANDE WALLE, Chief Justice.

Joyce Ellefson appealed from a district court judgment dismissing with prejudice her medical malpractice action against Dr. Peter Earnshaw, M.D., for failure to secure an expert witness as required under Section 28–01–46, N.D.C.C. We reverse and remand for further proceedings.

Between 1985 and 1989 Ellefson received treatment from Dr. Earnshaw for osteoarthritis of the knees. Ellefson agreed to have Dr. Earnshaw perform bilateral knee replacement surgery on her knees in July 1989. The surgery required Dr. Earnshaw to insert a reamer into the inner canals of Ellefson's femurs. It is undisputed that during this procedure both of Ellefson's femurs were fractured, and that neither fracture was detected until more than three days after the surgery. Corrective surgery was required to treat the fractured right femur. Ellefson sued Earnshaw, alleging that the fractures were caused by his negligence in conducting the surgery and that Dr. Earnshaw was also negligent in not discovering the fractures more quickly.

Section 28–01–46, N.D.C.C., requires a medical malpractice plaintiff to obtain a supporting expert opinion within three months of commencing an action, or risk dismissal of it by the court:

> "Any action for injury or death against a physician, nurse, or hospital licensed by this state based upon professional negligence is dismissible on motion unless the claimant has obtained an admissible expert opinion to support the allegation of professional negligence within three months of the commencement of the action or at such later date as set by the court. This section does not apply to alleged lack of informed consent, unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or other obvious occurrence."

In support of her malpractice action against Dr. Earnshaw, Ellefson obtained the opinion of an orthopedic surgeon, Dr. Perry W. Greene, Jr., M.D. When Dr. Earnshaw moved to dismiss Ellefson's action under Section 28–01–46, N.D.C.C., the trial court reviewed Dr. Greene's letter report and deposition. The court determined that Dr. Greene's deposition included "numerous testimony that could be construed as tantamount to opinions of negligence." Nevertheless, the court dismissed the case for Ellefson's failure to obtain a supporting expert opinion, because Dr. Greene's views included "contemplations, equivocations and ambiguities."

In *Larsen v. Zarrett,* 498 N.W.2d 191 (N.D.1993), we concluded that, as a matter of law, the plaintiff had failed to secure a supporting expert opinion for her malpractice claim, and that the trial court properly dismissed the case under Section 28–01–46, N.D.C.C. Because the facts of that case permitted us to resolve the issue "as a matter of law," it was unnecessary for us to decide what is the standard for reviewing a dismissal under Section 28–01–46, N.D.C.C. But, we made the following relevant comments about that issue:

> "A trial court's decision to dismiss a medical malpractice claim under the authority of § 28–01–46 does not fit neatly

within the contours of either a typical summary judgment disposition or a typical evidentiary ruling made during the course of a trial. The statute, by requiring an admissible expert opinion within three months of the commencement of the action, accelerates the litigation process in a medical malpractice case. The summary judgment procedure under Rule 56 envisions completion of more discovery by all of the parties than can usually be accomplished under the time limitations of the statute. Likewise, the consequence of a dismissal under the statute is much more drastic than the consequence of a typical evidentiary ruling made by the court during the course of a trial. For these reasons, simply applying either a genuine-issue-of-material-fact analysis or an evidentiary-abuse-of-discretion analysis may not be appropriate. Rather, greater leniency for the plaintiff who is subject to a motion for dismissal under § 28–01–46 may be required than is typically given under either standard." *Larsen, supra,* 498 N.W.2d at 195 fn. 2.

The purpose of Section 28–01–46, N.D.C.C., is to eliminate, at an early stage of the proceedings, frivolous or nuisance medical malpractice actions. *Heimer v. Privratsky,* 434 N.W.2d 357 (N.D.1989); *Fortier v. Traynor,* 330 N.W.2d 513 (N.D. 1983). The statute provides for a preliminary screening of totally unsupported cases. However, it does not require the plaintiff to complete discovery or to establish a prima facie case during that accelerated time frame. The statute merely requires a plaintiff to come forward with an expert opinion to support the allegations of malpractice.

As the trial court noted, Dr. Greene made numerous statements in support of Ellefson's claim that Dr. Earnshaw was negligent in performing the knee surgery. In a letter to Ellefson's attorney, dated July 11, 1990, Dr. Greene stated in relevant part:

"Upon awakening from the anesthetic and subsequently, it was noted that she [Ellefson] had developed bilateral femoral fractures, obviously during the procedure of the total knee replacement. Obviously then, we must assume that there was a technical problem that developed and the most likely technical problem would be an improper insertion of the intermedullary reamer, which is the first stage of the placing of the femoral component.... I would assume that it must be the metallic reamer, the pounding or the impacting of the reamer that weakened the bone to the point of failure.

\*     \*     \*     \*     \*     \*

"In summary, I believe that there was an obvious error in technique between the time that the total knee procedure was begun and the time it was finished, which resulted [in] weakening of the bone and led to the femoral fracture bilaterally.

\*     \*     \*     \*     \*     \*

"[T]he bilateral femoral fractures related to total knee arthroplasties is an unheard of complication, as far as I can detect and since it occurs so rarely, it must be related to a defect in the surgical technique."

During his deposition, Dr. Greene was asked whether Dr. Earnshaw was negligent in not obtaining full-length femur x-rays prior to conducting the surgery. He responded, in relevant part:

"I guess the problem comes in, then it's not the fact that he didn't take the x-rays that's negligent. It's the fact that he broke the femur."

The "equivocations" or "ambiguities" in Dr. Greene's deposition testimony do not demonstrate that he had doubts about whether Dr. Earnshaw's surgical technique was defective. Rather, they indicate that Dr. Greene had the mistaken belief that intent to cause harm is a necessary element for proving negligence:

"If you look at malpractice from the standpoint of something being done intentionally or with ignorance or with lack of foresight or anything like that, I don't think you can say this is malpractice, and I didn't say it was.

"This is a maloccurrence, this is an unexpected result. In this case, it turned out to be a very unfortunate result. But he didn't do it intentionally, I'm sure of that."

██ Upon reviewing Dr. Greene's opinion, it is clear that this action does not fall within the class of frivolous or unsupported cases that the Legislature intended to eliminate under Section 28–01–46, N.D.C.C. An expert opinion is not inadmissible because, on deposition examination by opposing counsel, the opinion may be questioned or its weight may be weakened. The statute does not require that the expert opinion be sufficient to sustain a directed verdict or that the matter be tried in the context of the motion to dismiss the action under the statute. Dr. Greene's expert opinion tends to corroborate and support Ellefson's allegations of Dr. Earnshaw's negligence. Consequently, the trial court erred in dismissing Ellefson's action under Section 28–01–46, N.D.C.C.

We reverse the order of dismissal and remand for further proceedings.

RALPH J. ERICKSTAD, Surrogate Judge, and MESCHKE and LEVINE, JJ., concur.

Surrogate Judge RALPH J. ERICKSTAD was Chief Justice at the time this case was heard and served as surrogate judge for this case pursuant to Section 27–17–03, N.D.C.C.

Justice J. PHILIP JOHNSON, who was a member of the Court when this case was heard, did not participate in this decision.

Justice NEUMANN and Justice SANDSTROM, not being members of the Court when this case was heard, did not participate in this decision.